**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LAMA Z.,

               Plaintiff,

         v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

Case No. 2:22-cv-00763 (BRM)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is an appeal by Plaintiff Lama Z. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, pursuant to Local Civil Rule 9.1(f), and for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

I.     **BACKGROUND**

A.     **Procedural History**

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner regarding her application for a period of disability, disability insurance benefits,

---

[1] Upon the Appeals Council's Order, denying Plaintiff's request for a review of the decision of Administrative Law Judge Peter R. Lee ("ALJ"), the ALJ's decision became the final decision of the Commissioner. (ALJ Hearing Decision, Tr. 12-23.)

and supplemental security income. On April 19, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. (ECF No. 6) at 12.) On April 20, 2017, Plaintiff also filed a Title XVI application for supplemental security income. (*Id.*) In both applications, Plaintiff alleged disability beginning March 3, 2014. (*Id.*) Plaintiff's claims were initially denied on July 19, 2017, and upon reconsideration on October 11, 2017. (*Id.*)

Plaintiff filed a written request for a hearing, received on December 4, 2017. (*Id.*) On April 20, 2020, the ALJ held a hearing by telephone, due to the COVID-19 pandemic. (*Id.*) All parties, including an impartial vocational expert, participated. (*Id.*) Plaintiff appeared by telephone and testified at the hearing with the assistance of an Arabic interpreter. (*Id.*) The ALJ held a supplemental hearing by telephone on November 24, 2020. (*Id.*) Plaintiff's attorney was present at both hearings. (*Id.*)

The ALJ issued a decision on December 28, 2020, finding Plaintiff was not disabled within the meaning of the Act. (*Id.* at 23.) On January 13, 2022, the Appeals Council denied Plaintiff's request for review of her appeal. (*Id.* at 1-6.) Having exhausted her administrative remedies, Plaintiff filed an appeal with this Court on February 11, 2022. (Compl. (ECF No. 1)). The administrative record is set forth in the transcript. (ECF No. 6.) On August 5, 2022, Plaintiff filed a brief in support of her appeal. (ECF No. 10.) On September 16, 2022, the Commissioner filed an opposition. (ECF No. 13.) On September 27, 2022, Plaintiff filed a reply. (ECF No. 14.) Plaintiff filed an amended reply on September 28, 2022.[2] (ECF No. 15.)

---

[2] Plaintiff's September 28, 2022 Amended Reply Brief was not altered in any substantive way from the September 27, 2022 Reply Brief, and so, the entries will be referenced interchangeably as "Plaintiff's Reply."

### B.    Factual Background

At the time of the ALJ's written decision dated December 28, 2020, Plaintiff was a sixty-year-old female, who had not engaged in substantial gainful activity since March 3, 2014. (Tr. 14-15, 18.) From 2012 through 2014, Plaintiff was employed by QuickChek, where she worked as a cashier for two months, and then as a cleaner. (*Id.* at 18.) Plaintiff was fired from her job at QuickChek when she tried to clean a sink at the store with mixed cleaners that started smoking. (*Id.*) Plaintiff also has experience working as a hair cutter. (*Id.*) While Plaintiff knows some English, she cannot read or write it. (*Id.*)

When Plaintiff filed for benefits in April 2017, she claimed she had the following conditions, beginning March 3, 2014: schizophrenia; bipolar; anxiety; glaucoma; back, arm, leg and joint pain; high cholesterol; diabetes; and high blood pressure. (*Id.* at 12, 18.) In a May 2017 Function Report, Plaintiff claimed her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, and use her hands. (*Id.* at 18.) However, she denied her conditions affected her ability to talk, hear, remember, concentrate, understand, follow instructions, and get along with others. (*Id.*). Plaintiff reported no problems with personal care, driving a car, shopping in stores, and handling bills and money. (*Id.*)

At the April 20, 2020 hearing, Plaintiff testified about her condition. (*Id.*) Plaintiff claimed she does not hear well with her left ear, and she has vision issues due to high blood pressure. (*Id.*) She alleged she was diabetic; has back, neck, and arm pain; and cannot lift more than five pounds. (*Id.*) After walking one block, she has to sit down, and she can only stand for ten minutes at a time. (*Id.*) Mentally, Plaintiff testified she suffers from panic attacks and has for the last fifteen years. (*Id.*) She also claimed to suffer from depression and is generally forgetful. (*Id.*)

3

In regard to Plaintiff's back and neck pain, a December 12, 2016 MRI report revealed three lumbar disc bulges at L3-4, L4-5, and L5-S1, with mild facet and ligamentum hypertrophic changes without spinal canal stenosis. (*Id.*) Images of the cervical spine, taken around the same time, showed a C3-4 and C5-6 disc herniation with compression of anterior thecal sac and impingement of descending nerve roots and neural foramina. (*Id.*) It also revealed disc bulges at C4-5 and C6-7 with compression of the anterior thecal sac and straightening of cervical lordosis, which may represent pain or muscle spasm. (*Id.* at 18-19.)

Dr. Alexander Hoffman's June 29, 2017 physical examination revealed Plaintiff was a well-developed, well-nourished and intelligent female. (*Id.* at 19.) She walked normally, got on and off the medical table without issue, and demonstrated no major restrictions of motion. (*Id.*) During an August 14, 2019 medical evaluation with Dr. Jon Hellman for toenail pain and difficulty walking, Dr. Hellman noted Plaintiff's gait was normal and she demonstrated 5/5 muscle strength. (*Id.* at 19-20.)

With regard to Plaintiff's diabetes, Dr. Hoffman confirmed Plaintiff had undergone treatment for the endocrine disorder for over ten years. (*Id.* at 19.) Plaintiff treated her diabetes with a combination of medications but did so poorly. (*Id.*) Plaintiff was advised by her primary doctor that she may need to take insulin but was not doing so at the time of the consultation. (*Id.*) She was never treated for any related retinopathy or neuropathy. (*Id.*) She had no complaints of chest pain, heart failure, or major respiratory issues, but was being treated for hypertension. (*Id.*) During her medical evaluation on August 14, 2019, Dr. Hellman said Plaintiff's diabetes was well-controlled. (*Id.* at 20.) The report also noted Plaintiff's medical history included hypercholesterolemia and hypertension. (*Id.*)

Plaintiff underwent two psychiatric evaluations during the relevant period. In a psychological examination report by Paulette Sabol, Ph.D. from June 26, 2017, Dr. Sabol noted Plaintiff had a history of anxiety and paranoid delusions. (*Id.*) Plaintiff treated with a psychiatrist once per month for anxiety, bipolar disorder, and schizophrenia for the past few years. (*Id.*) She also reported hearing voices telling her to pour hot water on her head. (*Id.*) Upon a mental status examination, Dr. Sabol found Plaintiff's speech and thought processes were coherent and goal-directed with no evidence of hallucinations, delusions or paranoia, though her mood was anxious. (*Id.*) Plaintiff's memory skills were impaired because of her anxiety. (*Id.*) However, Plaintiff was clear, cooperative and pleasant. (*Id.*) Overall, her intellectual functioning was deemed to be in average range and her fund of information was appropriate to her experience. (*Id.*) Her insight and judgment were fair. (*Id.*) Plaintiff was impressed for schizoaffective disorder, bipolar, and generalized anxiety disorder with panic attacks. (*Id.* at 21.)

In a second psychiatric evaluation by Dr. Anwar Ghali on September 8, 2017, Plaintiff appeared calm, quiet, cooperative, and attentive, though her mood was slightly depressed. (*Id.*) Plaintiff was coherent, relevant and somewhat over-productive, and denied any suicidal or homicidal thoughts and other compulsive phenomena. (*Id.*) While Plaintiff reported auditory hallucinations in the past, she denied experiencing any currently. (*Id.*) Her memory and orientation were intact. (*Id.*) Plaintiff displayed average intelligence and a reasonable grasp of general information. (*Id.*) Dr. Jon Heller also noted during his August 14, 2019 physical examination that despite Plaintiff's history of chronic depression disorder, Plaintiff appeared alert, oriented, and showed no signs of anxiety or depression. (*Id.* at 20.)

Medical opinions were provided by various state agency physicians, as well as Dr. Sabol and Dr. Ghali. The DDS medical consultants assessed Plaintiff for degenerative disc disease with

radiculopathy; diabetes; obesity; depressive disorder; and anxiety disorder. (*Id.*) The consultants

opined Plaintiff could only occasionally lift or carry twenty pounds; frequently lift or carry ten

pounds; stand or walk for about six hours in an eight-hour workday; and sit for six hours in an

eight-hour workday, all subject to postural and environmental limitations. (*Id.*) Further,

regarding Plaintiff's mental limitations, the consultants found Plaintiff had only moderate

limitations in understanding, remembering and applying information; mild limitations in

interacting with others; moderate limitations in concentrating, persisting, and maintaining pace;

and mild limitations in adapting and managing oneself. (*Id.*)

Dr. Sabol also provided an opinion with regard to the daily functioning of Plaintiff. (*Id.* at

22.) Dr. Sabol found:

> [Plaintiff] is able to follow and understand simple directions and instructions. She is able to perform simple tasks independently. She has some difficulty maintaining attention and concentration. She may have difficulty learning new tasks and performing complex tasks due to problems with attention, concentration, and poor memory. Her difficulties appear attributable to psychotic process and anxiety. The results of the presents evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

(*Id.*) Dr. Ghali reached a different conclusion. Plaintiff underwent a mental residual function

capacity assessment on September 22, 2017 and Dr. Ghali provided an opinion. (*Id.*) Dr. Ghali

found:

> [Plaintiff] has moderate limitations in understanding and memory. She has mostly marked limitation in sustained concentration and persistence, but moderate limitation in the ability to make simple work-related decisions. She has mild limitation in social interaction. And she has mild to marked limitation in adaptation, with no limitation in the ability to be aware of normal hazards and take appropriate precautions. Also, the claimant's impairment would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time.

(*Id.*)

    **C.**    **ALJ Decision**

    The ALJ determined plaintiff meets the status requirements of the Social Security Act and has not engaged in substantial gainful activity since March 3, 2014. (*Id.* at 14). The ALJ found Plaintiff had the following severe impairments: degenerative disc disease, with radiculopathy; diabetes; obesity; depressive disorder; and anxiety disorder. (*Id.* at 15.) However, Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (specifically, the criteria of listings 1.04, 9.00, 12.04, and 12.06). (*Id.*)

    In finding Plaintiff failed to establish the medical signs, symptoms, and degree of functional limitations to classify under Listings 1.04 (disorders of the spine); 9.00 (endocrine disorders); 12.04 (depressive, bipolar, and related disorders); or 12.06 (anxiety and obsessive-compulsive disorders), the ALJ addressed each in turn. As for Plaintiff's physical impairments, the ALJ found:

> With respect to Listing 1.04, the record does not document nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, nor lumbar spinal stenosis resulting in pseudoclaudication.
>
> With respect to Listing 9.00, . . . [c]oncerning [Plaintiff's] diabetes, . . . although there is no adult listing for diabetes, the effects of diabetes, either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing . . . . However, the evidence regarding [Plaintiff's] diabetes does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required . . . .
>
> With respect to obesity, . . . although there is no listing for obesity, it may be a factor in both "meets" and "equals" determinations. . . . However, even when obesity is considered in combination with

> [Plaintiff's] other impairments, [Plaintiff] does not meet or equal
> any of the listings in Appendix 1 . . . .

(*Id.* at 15-16.) The ALJ provided a similarly thorough analysis with respect to Plaintiff's mental

impairments. The ALJ determined that the severity of Plaintiff's mental impairments, singly and

in combination, do not meet or medically equal the criteria of Listings 12.03, 12.04, or 12.06.

(*Id.* at 16). The ALJ first considered whether Plaintiff met the "paragraph B" criteria, which

contemplates whether Plaintiff's mental impairments result in one extreme or two marked

limitations in a broad area of functioning. (*Id.*) The ALJ explained:

> Although [Plaintiff's] mental impairments cause some limitations
> in understanding/remembering, the medical evidence of record
> generally shows no serious deficits in long-term memory, short-
> term memory, insight, or judgment.
>
> In interacting with others [Plaintiff] has mild limitations. Although
> [Plaintiff's] mental impairments cause some limitations in
> interacting with others, the medical evidence of record generally
> shows that [Plaintiff] interacted adequately with all treating
> practitioners.
>
> With regard to concentrating, persisting, or maintaining pace,
> [Plaintiff] has moderate limitations. Although [Plaintiff's] mental
> impairments cause some limitations in concentration, the medical
> evidence of record shows that [Plaintiff] generally did not have
> serious difficulty concentrating during examinations.
>
> As for adapting or managing oneself, [Plaintiff] has mild
> limitations. Although [Plaintiff's] mental impairments cause some
> limitations in adaptation/managing oneself, the medical evidence
> of record shows [Plaintiff] did not usually have serious problems
> with adaptation and managing herself. Observations of treating
> practitioners generally show [Plaintiff] had no serious deficiencies
> in hygiene.
>
> Because [Plaintiff's] mental impairments do not cause at least two
> "marked" limitations or one "extreme" limitation, the "paragraph
> B" criteria are not satisfied.

(*Id*. at 16.) The ALJ similarly considered whether the "paragraph C" criteria were satisfied. (*Id*. at 17.) The ALJ found:

> [T]he evidence fails to establish the presence of the "paragraph C" criteria because medical treatment diminishes the signs of [Plaintiff's] mental disorders, and [Plaintiff] has more than minimal capacity to adapt to changes in her environment. The medical evidence does not show such marginal adjustment that [Plaintiff] has minimal capacity to adapt to changes in the environment or some new demands. It does not show that simple changes or increased demands have led to a deterioration of [Plaintiff's] functioning or inability to function outside the home.

(*Id.*)

Because the ALJ found Plaintiff failed to meet the criteria of any impairment in the listings, he continued with an assessment of Plaintiff's residual functional capacity ("RFC") during the relevant period. *(Id*. at 17-22.) The ALJ found Plaintiff has the capacity to perform light work, as defined in 20 CFR 416.967(b), with exceptions.[3] (*Id*. at 17.) The ALJ's process was twofold: first, he considered whether there was an underlying medically determinable physical or mental impairment reasonably expected to produce Plaintiff's pain and claimed symptoms; and second, whether the intensity, persistence and limiting effects of any symptom limit Plaintiff's work-related activities, based upon objective medical evidence and other evidence available in the record. (*Id.*) After consideration of Plaintiff's testimony, Plaintiff's May 2017 Function Report, and treatment records, prior administrative medical findings, and the opinions of both examining and consulting physicians, the ALJ found:

> [Plaintiff's] medically determinable impairments reasonably could be expected to cause symptoms and limitations. However, to the extent that [Plaintiff] alleges that the intensity, persistence, and limiting effects of her conditions result in disability, this is not

---

[3] Per the ALJ, Plaintiff "can never climb ropes, ladders, or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; frequent reaching; frequently balance; occasionally have exposure to extremes in environmental conditions." (*Id.* at 17.)

> consistent with the evidence in the record. With respect to
> [Plaintiff's] degenerative disc disease, with radiculopathy;
> diabetes; obesity; depressive disorder; and anxiety disorder, the
> record reflect that these are severe impairments and [Plaintiff] has
> some resulting limitations, which are reflected in the above [RFC]
> finding.

(*Id.* at 18.) Specifically, the ALJ found Plaintiff's conditions limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, and use her hands. (*Id.*) However, Plaintiff could talk, hear, remember, concentrate, understand, follow instructions, and get along with others. (*Id.*) Plaintiff could also take care of herself, drive a car, shop, pay bills, count change, and otherwise manage savings accounts and money. (*Id.*)

In reaching his conclusion, the ALJ found the opinions of the state agency medical consultants somewhat persuasive, as their opinions were generally consistent with medical records and supporting evidence, but they did not have the opportunity to personally examine Plaintiff. (*Id.* at 21.) The ALJ found Dr. Sabol's report partially persuasive, in that the report was based on a personal examination of Plaintiff and the opinion was generally consistent with evidence regarding Plaintiff's mental impairments, though Plaintiff only saw Dr. Sabol personally on one occasion. (*Id.* at 22.) Lastly, the ALJ found Dr. Ghali's opinion generally unpersuasive. (*Id.*) While his findings were based on personal examination of Plaintiff, it was only a one-time evaluation. (*Id.*) Further, the ALJ found Dr. Ghali's opinion that Plaintiff has marked limitations, as opposed to only mild limitations, in mental functioning is not supported by the evidence in Dr. Ghali's report or the record overall. (*Id.*)

Ultimately, the ALJ found Plaintiff is capable of performing past relevant work as a cleaner. (*Id.*) The ALJ reasoned this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*) Plaintiff's past relevant employment included working as a cleaner, performed at the "light level of exertion," carrying a SVP of 2, which is

unskilled; cashier, also performed at the "light level of exertion," carrying a SVP of 3, which is semi-unskilled; and a hair cutter, performed at the "light level of exertion," carrying a SVP of 6, which is skilled. (*Id.* at 22-23.) The ALJ deemed this work substantial gainful activity, performed long enough to achieve average performance. (*Id.* at 23.) A vocational expert testified that an individual with the same RFC as Plaintiff could perform Plaintiff's past work as a cleaner. (*Id.*) The ALJ determined the expert's conclusion was consistent with the information contained in the Dictionary of Occupational Titles. (*Id.*)

Considering all the evidence in the record and comparing Plaintiff's RFC with the physical and mental demands of work as a cleaner, the ALJ determined "the demands of [Plaintiff's] past relevant work as a cleaner do not exceed [Plaintiff's] residual functional capacity," and therefore, "[Plaintiff] is able to perform it as actually and generally performed." (*Id.*) Accordingly, the ALJ found Plaintiff was not disabled under the relevant provisions of the Act. (*Id.*)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Therefore, this Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of disability insurance. 20 C.F.R. § 404.1520.[4] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

---

[4] Regulations for disability insurance and supplemental income benefits are virtually identical. For the purposes of this appeal, further citations will only be made to the disability insurance benefits regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel supplemental income benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146–47 n.5. An administrative law judge bears the burden of proof for the fifth step. *Id.* at 263.

For the first four steps, the harmless error doctrine[5] requires a plaintiff to show: 1) an error occurred; and 2) but for that error, she might have proven her disability. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when appealing a decision at the first four steps, a court considers whether the plaintiff articulated a basis for a decision in her favor, based on the existing record. If the plaintiff cannot, it is unlikely she will

---

[5] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, which concerned review of a governmental agency determination. 556 U.S. 396, 408–11 (2009). The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

meet her burden of showing an error was harmful. *See e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 U.S. Dist. LEXIS 62340, at *20 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV.   DECISION

Plaintiff claims the ALJ's final determination is erroneous and not based on substantial evidence, specifically arguing:

> 1. The final decision of the Commissioner that [Plaintiff] is able to perform her past relevant work as a cleaner at the light level is erroneous and is not based on substantial evidence;
>
> 2. The final decision of the Commissioner that [Plaintiff] does not meet the listings at 12.04 [d]epressive, bipolar, and related disorders is erroneous and is not based on substantial evidence;
>
> 3. The final decision of the Commissioner that [Plaintiff] is not disabled under POMS DI 25020.010 on grounds that she has the mental abilities to perform any work in the national economy is erroneous and is not based on substantial evidence;

> 4. The final decision of the Commissioner that [Plaintiff] is not disabled under Grids 201.01 for sedentary work and Grids 202.01 for light work is erroneous and is not based on substantial evidence; [and]
>
> 5. The [C]ommissioner did not properly weigh the relevant, probative evidence that was available, which should result in the decision of the [ALJ] being reversed or the case being remanded.

(ECF No. 10.) In response, the Commissioner submits the ALJ's decision is supported by treatment records, prior administrative medical findings, and both examining and consultative physicians. (ECF No. 13.) Specifically, the Commissioner contends substantial evidence supports the ALJ's findings relating to Plaintiff's mental impairments and residential functional capacity assessment; the ALJ properly evaluated opinion evidence; the ALJ properly found Plaintiff could perform her past relevant work; and Plaintiff's remaining arguments had no merit. (*Id.*) Plaintiff replied, arguing the decision of the ALJ was not based on substantial evidence; Plaintiff cannot perform light work and therefore, cannot perform her past work as a cleaner; and the opinion of Plaintiff's treating physician should be given more weight than the opinions of the medical consultants. The Court finds the ALJ's decision was based on substantial evidence in the record and should be affirmed.

### A. Plaintiff's Mental Impairments Do Not Meet The Criteria Set Forth At Listing 12.04.

Plaintiff alleges the ALJ erred in finding Plaintiff does not have an impairment, or combination of impairments that meets or medically equals the severity of the relevant listed impairments, specifically, Listing 12.04 for depressive, bipolar and related disorders. (ECF No. 10.) To qualify as a mental impairment under Listing 12.04, the alleged disability must satisfy the requirements of Paragraphs A and B, or alternatively, the requirements of Paragraphs A and

C. 20 C.F.R. § 404, Subpart P, App'x 1. Here, Plaintiff claims she meets the criteria of Listing 12.04, Paragraphs A and B, with the ALJ's findings as to Paragraph B at issue. (*Id.*)

To satisfy the criteria of Paragraph B under Listing 12.04, Plaintiff must demonstrate either an "[e]xtreme limitation of one, or marked limitation of two" of the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself. 20 C.F.R. § 404, Subpart P, App'x 1. A "marked limitation" means Plaintiff's functioning is "independently, appropriately, effectively, and on a sustained basis . . . seriously limited." (*Id.*) An "extreme limitation" means Plaintiff is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." (*Id.*) Plaintiff alleges she meets the criteria of Paragraph B, citing marked limitations in two areas of mental functioning: (1) remembering and applying information; and (2) concentrating, persisting and maintaining pace. Plaintiff references instances in the reports of Dr. Sabol and Dr. Ghali, wherein the doctors noted Plaintiff demonstrated difficulty recalling objects, repeating back sentences, and carrying out instructions.

The ALJ found, generally, Plaintiff does not demonstrate "the medical signs, symptoms, laboratory findings, or degree of functional limitations required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that [Plaintiff's] impairment(s) medically equal a listed impairment." (Tr. 15.) In considering the Paragraph B criteria of Listing 12.04, the ALJ found Plaintiff had only moderate limitations in understanding, remembering and applying information, because, while Plaintiff showed some limitations in understanding and remembering, the medical evidence did not reveal serious deficits in long-term or short-term memory, insight or judgment. (*Id.* at 16.) The ALJ similarly found Plaintiff had moderate limitations in concentrating, persisting or maintaining

pace, because, while Plaintiff showed some limitations in concentration, she did not have serious difficulty concentrating during her examinations. (*Id.*) The ALJ also determined Plaintiff only had mild limitations in interacting with others and adapting and managing oneself, since Plaintiff generally interacted well and presented herself well in all encounters with treating practitioners. (*Id.*) Because Plaintiff does not have any "marked" or "extreme" limitation in any category under Paragraph B, the ALJ held the criteria of Listing 12.04 was not satisfied.[6] (*Id.*)

The ALJ's determination on this third step of the analysis is supported by "substantial evidence" in the record. *See Biestek*, 139 S. Ct. at 1154. Indeed, the ALJ considered the same reports of Dr. Sabol and Dr. Ghali that Plaintiff relies upon in her argument, among others, (*see* Tr. 20), and simply reached a different conclusion based on the evidence and the weight afforded to each, (*Id.* at 22.) The ALJ's decision discussed Plaintiff's relevant testimony, medical history and treatment in detail. (*Id.* at 18-21.) The decision considered not only the treating and consultative practitioner's impressions, but also their notes regarding Plaintiff's demeanor, appearance, and mental state, and how each supported or contradicted the physicians' conclusions. (*Id.*)

For example, the ALJ's decision relied, in part, upon Plaintiff's self-written Function Report, which noted Plaintiff had no difficulty talking, hearing, remembering, concentrating, understanding, following instructions, getting along with others, performing personal care, driving, shopping, and managing money. (*Id.* at 18.) Plaintiff's examinations and her physician's clinical findings revealed Plaintiff was calm, pleasant, cooperative, and responsive; she denied suicidal or homicidal thoughts; she was alert, oriented, and of average intelligence; and her

---

[6] While Plaintiff does not contend she meets the criteria of Paragraph C to qualify as disabled pursuant to Listing 12.04, Paragraphs A and C, it is important to note the ALJ similarly found Plaintiff failed to meet the Paragraph C criteria. (*Id.* at 16-17.)

insight, judgment, and fund of information was appropriate. (*Id.* at 20-21.) Her performance on mental evaluations and assessments revealed, generally, Plaintiff suffers from mental limitations, but also, that she is capable of performing simple and routine tasks. (*Id.* at 22.) Here, the ALJ's determinations regarding limitations on Plaintiff's attention, judgment, adaptability, and capacity to interact, are supported by substantial, relevant evidence, and are sufficient to support the conclusion that Plaintiff's mental impairments were severe, but did not satisfy Listing 12.04 for *per se* disability. *See Richardson*, 402 U.S. at 401; *Newell*, 347 F.3d at 545.

### B.  Plaintiff Has The Residual Functional Capacity To Perform Her Past Relevant Work At The Light Level.

Plaintiff next argues the ALJ erred in finding she has the residual functional capacity to perform her past relevant work at the light level. (ECF No. 10.) Plaintiff contends the ALJ failed to consider her testimony and other evidence regarding her physical and mental impairments in rendering his decision. (*Id.*)

First, Plaintiff submits the ALJ overlooked her testimony that she lacked the judgment necessary to perform her previous job as a cleaner at QuickChek. (*Id.*) She cites an incident resulting in her termination wherein she created smoke at her job by dumping cleaners into a greasy sink. (*Id.*) Plaintiff also argues the ALJ overlooked her testimony that Plaintiff's old employer believed her lack of proficiency in English to be a problem. (*Id.*)

Plaintiff further contends the ALJ failed to consider evidence regarding the severity of her physical and mental impairments in finding Plaintiff could perform her past relevant work. (*Id.*) Plaintiff cites to medical reports and scans in the record, which revealed "severe impairments" and "limitations" of her back and neck, as well as Plaintiff's own testimony she could not lift more than five pounds, in support of her argument. (*Id.*) Plaintiff also cites physical limitations in the form of a severe fungal infection of the toenails, an ulcer on her right great toe,

hearing loss in her left ear, glaucoma, and diabetes, to claim an inability to perform work at the light level. (*Id.*) She argues the Function Report indicates she is no longer capable of housework, and employment as a cleaner is a more intense version of housework. (*Id.*) As for her mental impairments, Plaintiff relies on Dr. Ghali's report, which found Plaintiff has "marked" limitations in the mental abilities needed to perform any job. (*Id.*)

In considering Plaintiff's residual functional capacity, the ALJ considered first, whether there is an underlying medically determinable physical or mental impairment reasonably expected to produce Plaintiff's symptoms, and second, whether the intensity, persistence, and limiting effects of those symptoms affect Plaintiff's ability to do work-related activities. (Tr. 17). The ALJ relied upon Plaintiff's testimony and function report, as well as several medical opinions and prior medical findings. The ALJ determined:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments reasonably could be expected to cause symptoms and limitations. However, to the extent that [Plaintiff] alleges that the intensity, persistence, and limiting effects of her conditions result in disability, this is not consistent with the evidence in the record. With respect to [Plaintiff's] degenerative disc disease, with radiculopathy; diabetes; obesity; depressive disorder; and anxiety disorder, the record reflects that these are severe impairments and [Plaintiff] has some resulting limitations, which are reflected in the above residual functional capacity finding.
>
> . . . .
>
> [T]he objective medical evidence [of Plaintiff's impairments listed above] . . . is consistent with [Plaintiff's] statement in the function report . . . and at the hearing that [Plaintiff's] conditions cause both physical and mental limitations. Overall, the objective evidence supports the finding above that [Plaintiff's] residual functional capacity is reduced to light work, subject to the additional limitations set forth.

(Tr. 18, 21).

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence in the record, *id.*, and descriptions and observations of Plaintiff's limitations from her impairments provided by Plaintiff and other persons, 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1529. As for Plaintiff's alleged mental impairments, the nature and extent of Plaintiff's mental limitations and restrictions is assessed first and is followed by a determination of her residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c). As for Plaintiff's alleged physical impairments, Plaintiff's statements about pain or other symptoms, including intensity and persistence, will not alone establish disability. There must be medical signs and laboratory findings which show medical impairment(s) that could reasonably be expected to produce the pain alleged. 20 C.F.R. § 404.1529(a).

The ALJ must explain his or her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119. However, the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," and the ALJ's decision must be "read as a whole" to determine whether he considered the appropriate factors in reaching his conclusion. *Jones*, 364 F.3d at 505.

The Court finds substantial evidence supports the ALJ's determination regarding Plaintiff's RFC. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). When read as a whole, it is evident the ALJ considered and incorporated into his reasoning Plaintiff's testimony, treatment history, and the findings of various treating and consultative physicians, which are consistent with his decision. (Tr. 18-22.) The evidence revealed Plaintiff's physical ability to walk normally, display full muscle strength and range of motion, and get on and off of an examination table (*see id.* at 19-20), as well as her mental ability to concentrate, understand, and

follow instructions (*id.* at 18, 20, 22). The ALJ considered the evidence Plaintiff points to in her brief in support of her arguments, and resultingly concluded Plaintiff is limited to the modest demands of light work. (*Id.* at 21.) Plaintiff's disagreement with the ALJ's conclusion, which is based upon more than a mere scintilla of relevant evidence, does not compel reversal here.

Plaintiff also contends the ALJ erroneously adopted the findings of the doctors employed by the Social Security Administration in rendering the decision on Plaintiff's RFC, because the physicians only examined the record, and did not treat Plaintiff. (ECF No. 10.) The ALJ found the consultants' opinions somewhat persuasive and generally consistent with the overall evidence, which Plaintiff argues was improper, thereby rendering the ALJ's ultimate findings unsubstantiated by relevant evidence. (*Id.*) Plaintiff claims it was error to give less weight to the reports of Dr. Sabol, who the ALJ found to be partially persuasive and consistent with the record, and Dr. Ghali, who the ALJ found was generally not persuasive and unsupported by the record, because Dr. Sabol and Dr. Ghali are treating physicians in a better position to make findings regarding Plaintiff's impairments than the consultative physicians who only examined Plaintiff's files. (*Id.*)

For claims filed before March 27, 2017, § 404.1527 outlines the framework for consideration of medical opinions and prior administrative medical findings in assessing a claimant's RFC. 20 C.F.R. § 404.1527. Under these "old" regulations, opinions from treating physicians are given preference. *Id.* However, § 404.1520c is effective for cases filed on or after March 27, 2017, as Plaintiff's claims were, and, accordingly, these "new" regulations apply here.

Section 404.1520c "eliminated the hierarchy of medical source opinions that gave preference to treating sources." *David K. v. Kijakazi*, Civ. A. No. 20-12419, 2022 U.S. Dist. LEXIS 13989, at *21 (D.N.J. Jan. 25, 2022). Under the new regulations, the following five

factors are considered for all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). The most important factors when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports her medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(2). When articulating how the ALJ considered medical opinions and prior administrative medical findings in a particular case, the ALJ is *specifically* required by the regulations to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain his or her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119.

Here, the ALJ properly considered and articulated the supportability and consistency factors for the opinions and findings of Dr. Sabol, Dr. Ghali, and the consultative physicians in determining Plaintiff's RFC. Indeed, the ALJ cited relevant medical records and explained how those records complemented or contrasted said findings. In challenging the ALJ's consideration of the examining and consultative physician opinions, Plaintiff failed to challenge the ALJ's

24

analysis under the applicable standard, but instead reargues her position that she cannot perform her past relevant work at the light level of exertion. That Plaintiff simply disagrees with the weight the ALJ attributed to each opinion is insufficient to support her claim of error, especially when the correct standard is applied. The ALJ's decision, finding Plaintiff has the residual functional capacity to perform her past relevant work at the light level, is supported by substantial evidence in the record. Further, to the extent Plaintiff argues the ALJ overlooked any medical evidence or other evidence in the record, the Court finds Plaintiff failed to meet her burden of demonstrating the overlooked evidence would have changed the outcome.

### C.  Plaintiff Is Capable Of Performing Work In The National Economy.

Plaintiff claims she does not possess the mental abilities to perform any job in the national economy. (ECF No. 10.) Plaintiff argues, according to Dr. Ghali, she has marked impairments in each of the abilities cited in POMS DI 25020.010 as necessary to function independently, appropriately and effectively in the national economy. (*Id.*) Further, Plaintiff contends her inability to perform any job in the national economy is further demonstrated by her failure to meet the criteria of Grids 201.1 and 202.01 for sedentary and light work, respectively, because she is sixty-one, has a limited education, and has past relevant work that is unskilled. (*Id.*)

The final step of the analysis requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which [Plaintiff] can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all [Plaintiff's] impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. This is often determined with

the assistance of a vocational expert. *Id.* (citation omitted).

At the hearing on April 20, 2020, a vocational expert assumed a hypothetical for an individual with the residual functional capacity of Plaintiff and confirmed that hypothetical individual could perform Plaintiff's past work as a cleaner. (Tr. 23). Based on the vocational expert's response and the record as a whole, the ALJ found the demands of Plaintiff's past work as a cleaner do no exceed Plaintiff's residual functional capacity, and Plaintiff is able to perform the job. (*Id.*)

There is sufficient evidence in the record supporting the ALJ's decision on this factor, and therefore, the Court affirms. *See Richardson*, 402 U.S. at 401; *Newell*, 347 F.3d at 545. The vocational expert confirmed what the record already revealed, that Plaintiff is capable of performing work as a cleaner, and otherwise in the national economy.

## V.   CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show the ALJ erred in determining Plaintiff was not disabled under the Social Security Act. The Commissioner's decision is **AFFIRMED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Date: October 28, 2022